Timothy J. BREEN, Plaintiff,

v.

SELECTIVE SERVICE LOCAL BOARD NO. 16, BRIDGEPORT, CONNECTICUT and Brig. Gen. Ernest E. Novey, Individually and as Director of the Selective Service System for Connecticut, Defendants.

Civ. No. 12422.

United States District Court
D. Connecticut.

March 13, 1968.

Lawrence P. Weisman, of Cohen & Wolf, Bridgeport, Conn., and Emanuel Margolis, Stamford, Conn., for plaintiff.

Jon O. Newman, U. S. Atty., Hartford, Conn., for defendants.

TIMBERS, Chief Judge.

## STATEMENT OF PROCEEDINGS AND COURT'S RULINGS

In this action brought to challenge defendants' right to induct plaintiff into the armed forces, plaintiff has moved for a preliminary injunction to restrain defendants from continuing to process him for induction. Defendants oppose this motion and have moved for dismissal of the complaint on the ground that jurisdiction is lacking in this Court. Since the Court agrees that plaintiff's complaint fails to state a cause of action over which the Court has jurisdiction, plaintiff's motion for a preliminary injunction is denied and the complaint is dismissed. Plaintiff's motion for the convening of a three-judge district court to consider the issues here presented is also denied.

On November 16, 1967, plaintiff delivered his draft card to a clergyman in Boston, Massachusetts, for return to the government. Allegedly the sole purpose of this act was to protest United States' involvement in the war in Vietnam.

## PLAINTIFF'S STATUS AS A DELINQUENT AND APPLICABLE REGULATIONS

The Military Selective Service Act of 1967, 50 App. U.S.C. § 451 et seq., authorizes the President of the United States to prescribe necessary rules and regulations to carry out its provisions. 50 App. U.S.C. § 460(b) (1). Pursuant to this authorization, Sections 1617.1 and 1623.5 of the Selective Service regulations (32 C.F.R. §§ 1617.1 and 1623.5 (1967)) require a person registered and classified by the selective service to have at all times in his personal possession his Registration Certificate and a valid Notice of Classification. Both items are commonly referred to as draft cards. In addition, § 1602.4 of the regulations (32 C.F.R. § 1602.4 (1967)) defines a "delinquent" as "a person required to be registered under the selective service law who fails or neglects to perform any duty

required of him under the provisions of the selective service law." Sections 1642.1–1642.46 (32 C.F.R. §§ 1642.1–1642.46 (1967)) govern the treatment of delinquents. In relevant part they provide that a person failing to perform any duty required under the law may be declared a delinquent by the Board. (32 C.F.R. § 1642.4(a) (1967)). When this is done the Board must send a Delinquency Notice to the registrant setting forth the duty which the registrant has failed to perform. (32 C.F.R. § 1642.4 (b) (1967)). Once having declared a registrant delinquent the Board may proceed to reclassify the registrant into Class I–A (32 C.F.R. § 1642.12 (1967)), and having done so, the Board must order him to report for induction before all others, even before volunteers (32 C.F.R. §§ 1642.13 and 1631.7 (1967)).

On January 9, 1968, plaintiff's draftboard, located in Bridgeport, Connecticut, mailed him a Delinquency Notice, informing him that on January 8, 1968, he had been "declared delinquent" because of "Failure to have Registration Certificate in your possession." Also on January 9, 1968, plaintiff was reclassified from Class II–S (student deferment) to Class I–A. On January 11, 1968 he was ordered to report for a pre-induction physical, but, at his request, the examination was transferred to Boston, Massachusetts, and postponed until March 4, 1968.

## RELIEF SOUGHT

Plaintiff filed the original complaint in this action on February 20, 1968. On March 1, 1968, plaintiff filed a substituted complaint and the instant motion for a preliminary injunction. Plaintiff also sought and obtained at that time an ex parte temporary restraining order.

A hearing was held on March 8, 1968, on plaintiff's motion for a preliminary injunction. Also filed and heard at that time was plaintiff's motion for the convening of a three-judge district court pursuant to 28 U.S.C. § 2282 to consider the request for a preliminary injunction and for the extension of the temporary restraining order until the three-judge district court could act. In addition,

defendants' counsel filed, and the Court heard, a motion to dismiss the complaint for lack of jurisdiction.

At the conclusion of the hearing the Court dissolved the temporary restraining order but otherwise reserved decision on the pending motions.

Plaintiff's complaint avers that the draftboard was without jurisdiction to declare plaintiff a delinquent and to reclassify him, and that its conduct in so doing was unconstitutional. The Board's actions, plaintiff claims, were meant as a penalty and will have the effect of inhibiting the exercise of First Amendment rights by himself and others. Plaintiff also attacks the regulations described above as being unconstitutional on their face and as applied, claiming that they violate the First, Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States. Plaintiff further claims that his reclassification into Class I–A simultaneously with the mailing to him of notice that he was "delinquent" and prior to his receipt of that notice violated Selective Service regulations and due process of law. Finally, plaintiff contends that his reclassification resulted from an improper "directive" concerning reclassification sent by the Director of the Selective Service System, Lt. Gen. Lewis B. Hershey, to draftboards on October 26, 1967.

Plaintiff asks the Court in his complaint to declare that the designation of plaintiff as delinquent and his reclassification are null and void; to enjoin defendants from taking further steps to induct or reclassify him on the basis of his turning in his draft card; to declare the Selective Service regulations referred to above unconstitutional on their face and as applied; and to declare the Hershey "directive" void on its face and as applied. Plaintiff also demands $20,000 in damages.

## JURISDICTIONAL QUESTION RAISED

The threshold question raised by plaintiff's complaint and motion for a preliminary injunction, and brought into focus by defendants' motion to dismiss, is whether plaintiff states a cause of action over which this Court has jurisdiction.

Plaintiff claims jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343 and 2201, and asserts that the matter in controversy exceeds the value of $10,000, exclusive of interest and costs, and arises under the Constitution and laws of the United States, including 42 U.S.C. §§ 1981 and 1983.

■ It is clear that 28 U.S.C. § 2201 does not confer jurisdiction but merely creates a remedy where jurisdiction otherwise exists. Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671–72 (1950).

Nor is 28 U.S.C. § 1343 of any help to plaintiff. Subsections (1) and (2) of that provision only confer jurisdiction in instances where damages are sought with respect to violations of 42 U.S.C. § 1985; plaintiff does not allege, nor could he properly allege, a violation of that section. Subsection (3) applies only where a state law, statute, ordinance, regulation, custom or usage is involved; none of these is involved here. Subsection (4) confers jurisdiction where relief is sought under an Act of Congress providing for the protection of civil rights. The only such laws relied upon by plaintiff, 42 U.S.C. §§ 1981 and 1983, require state action; no state action is alleged here. See Oestereich v. Selective Service System Local Bd. No. 11, 280 F. Supp. 78 (D.Wyo.1968), aff'd, per curiam, 390 F.2d 100 (10 Cir. 1968).

Nevertheless, this action does arise under the Constitution and laws of the United States and as such 28 U.S.C. § 1331 would generally confer jurisdiction if the matter in controversy exceeded the sum or value of $10,000, exclusive of interest and costs. Although plaintiff alleges that the action involves the requisite jurisdictional amount and seeks to recover $20,000 in damages, a very real question exists whether the necessary amount is in fact in controversy. See Wolff v. Selective Service Local Bd. No. 16, 372 F.2d 817, 826 (2 Cir. 1967). Cf.

Oestereich v. Selective Service System Local Bd. No. 11, supra.

## SECTION 8(c) OF MILITARY SERVICE ACT OF 1967 (AMENDING SECTION 10(b) (3) OF UNIVERSAL MILITARY TRAINING AND SERVICE ACT)

Assuming the requisite jurisdictional amount has been sufficiently demonstrated, the Court is convinced that § 8(c) of the Military Selective Service Act of 1967, amending Section 10(b) (3) of the Universal Military Training and Service Act (50 App. U.S.C. § 460(b) (3)), specifically deprives this Court of whatever jurisdiction it might otherwise have over this action.

Prior to its amendment in June, 1967, Section 10(b) (3) provided that decisions of local draftboards with respect to classifications "shall be final, except where an appeal is authorized and is taken in accordance with such rules and regulations as the President may prescribe." The United States Supreme Court in Estep v. United States, 327 U.S. 114, 122–23 (1946), interpreted this to mean that:

> ". . . Congress chose not to give administrative action under this Act the customary scope of judicial review which obtains under other statutes. It means that the Courts are not to weigh the evidence to determine whether the classification made by the local boards was justified. The decisions of the local boards made in conformity with the regulations are final even though they may be erroneous. The question of jurisdiction of the local board is reached only if there is no basis in fact for the classification which it gave the registrant."

Having thus defined the narrow scope of judicial review, the Court proceeded to interpret Congressional intent as to when that review could take place. After Falbo v. United States, 320 U.S. 549 (1944), it appeared that a registrant could not even defend a criminal prosecution under the Act on the ground that his Board's classification action was without jurisdiction; rather, review could come only by way of habeas corpus after his actual induction. But in *Estep* the Court held that where all administrative remedies had been exhausted, the defense could be raised in a criminal prosecution for the simple reason that Congress could not have intended to require "the courts to march up the hill when it is apparent from the beginning that they will have to march down again." Id. at 125. The Court, however, was careful to point out that it was only this practical reason which resulted in its conclusion, stating that:

> "We do not suggest that because Congress has provided one judicial remedy another should be implied. We may assume that where only one judicial remedy is provided, it normally would be deemed exclusive." Id.

■ Implicit in the Court's reasoning is that Congress, in the context of the Selective Service System, can constitutionally limit judicial review of administrative action to a point in time subsequent to the institution of criminal proceedings or actual induction of the registrant. This principle was again recognized by the Court in Witmer v. United States, 348 U.S. 375, 377 (1955).

Several courts, however, without questioning Congressional power to provide otherwise, have held that Section 10(b) (3) did not deprive them of jurisdiction to review classification prior to the exhaustion of administrative remedies and the institution of criminal proceedings.

Most notable of these cases was Wolff v. Selective Service Local Bd. No. 16, supra, a decision by the Court of Appeals for this Circuit. The plaintiff in that case was attempting to challenge his delinquency status and reclassification which resulted from his participation in demonstrations against United States involvement in Vietnam. Judge Medina, having found that Section 10(b) (3) did not deprive the court of jurisdiction, then held that the facts of the case warranted the court's setting aside its own

doctrines of justiciability and exhaustion of administrative remedies.

Of particular relevancy was the court's finding that the Board's action was completely without authority of any regulation and as such constituted a "chilling effect" upon the exercise of "fragile and sensitive" constitutional rights within the purview of Dombrowski v. Pfister, 380 U.S. 479 (1965). Id. at 824. The facts of the instant case are, of course, quite different from those in *Wolff*. Here the Board's actions were entirely by virtue of regulations. The existence of a standard permits the registrant to know exactly what conduct will result in Board action and, as such, the far-reaching "chilling effect" feared by the court in *Wolff* is non-existent. Thus even if the first premise of *Wolff*, that Section 10(b) (3) did not deprive this Court of jurisdiction, were still valid, the Court would feel compelled in this instance to decline to intervene until plaintiff had completely exhausted his administrative remedies.

But that first premise of *Wolff* does not have the force of authority which it would otherwise have for this Court in view of Congressional action taken since that decision. That action was the amendment of Section 10(b) (3) in June, 1967 by Section 8(c) of the Military Selective Service Act of 1967 so as to read as follows:

"No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution instituted under section 12 of this title, after the registrant has responded either affirmatively or negatively to an order to report for induction, or for civilian work in the case of a registrant determined to be opposed to participation in war in any form: *Provided,* That such review shall go to the question of the jurisdiction herein reserved to local boards, appeal boards, and the President only when there is no basis in fact for the classi-

fication assigned to such registrant." 50 App.U.S.C. § 460(b) (3).

Whatever doubt there was as to Congressional intent concerning the former Section 10(b) (3) has thus now been eliminated.

Plaintiff argues that Congress merely intended to codify such cases as *Wolff*. That just the opposite is true is plainly expressed by the report of the Armed Services Committee of the House of Representatives with respect to the amendment:

"The committee was disturbed by the apparent inclination of some courts to review the classification action of local or appeal boards before the registrant had exhausted his administrative remedies. Existing law quite clearly precludes such a judicial review until after a registrant has been ordered to report for induction and has responded either affirmatively or negatively to such an order. In view of this inclination of the courts to prematurely inquire into the classification action of local boards, the committee has rewritten this provision of the law so as to more clearly enunciate this principle. The committee was prompted to take this action since continued disregard of this principle of the law by various courts could seriously affect the administration of the Selective Service System." H.Rep. No. 267, 90th Cong. 1st Sess., 7 U.S. Code Cong. & Ad.News 1489 (1967).

It is therefore clear that because plaintiff has not exhausted his administrative remedies and has not yet been ordered to report for induction, this Court lacks jurisdiction to entertain plaintiff's complaint. Oestereich v. Selective Service System Local Bd. No. 11, supra; Carpenter v. Hendrix, 277 F.Supp. 660 (N.D.Ga.1967); Moskowitz v. Kindt, 273 F.Supp. 646 (E.D.Pa.1967).

In view of Estep v. United States, supra, and Witmer v. United States, supra, plaintiff's claim that Congress cannot constitutionally force a registrant to await criminal proceedings or actual

754

induction to test the validity of his classification is without merit. Whether the amendment intends to preclude the use of habeas corpus and, if so, whether it would therefore be unconstitutional, is not an issue here as plaintiff has not yet been inducted into the armed services and is not bringing this action upon a petition for a writ of habeas corpus. *Moskowitz v. Kindt, supra,* at 648–49.

## DENIAL OF MOTION TO CONVENE THREE-JUDGE DISTRICT COURT

■ Plaintiff has moved for the convening of a three-judge district court pursuant to 28 U.S.C. § 2282 and contends that a single judge is without power even to dismiss the complaint for lack of jurisdiction. First, assuming there were federal court jurisdiction, 28 U.S.C. § 2282 requires the convening of a three-judge district court only when a complaint seeks an injunction against the enforcement of an Act of Congress and not when the injunction is sought against the enforcement of regulations promulgated pursuant to a general authorization contained therein. *Sardino v. Federal Reserve Bank of New York,* 361 F.2d 106, 113–16 (2 Cir. 1966). Secondly, *it is not only within the power of, but it is incumbent upon, the single judge to whom the application is made to determine whether there is any basis for federal jurisdiction.* Cf. *Idlewild Liquor Corp. v. Epstein,* 370 U.S. 713, 715 (1962). If in the course of making that determination, the construction and constitutionality of a federal statute is drawn into question, as plaintiff attempted to do here with respect to Section 8(c) of the Military Selective Service Act of 1967, the Court is not required by 28 U.S.C. § 2282 to halt its determination and convene a three-judge district court to consider the matter. Not only must the complaint on its face raise a substantial question as to the constitutionality of a federal statute, but it must also seek an injunction against its enforcement, neither of which is done by plaintiff's complaint with re-

spect to Section 8(c) of the Military Selective Service Act of 1967. See, *Flemming v. Nestor,* 363 U.S. 603, 606–08 (1960). Therefore, plaintiff's motion for the convening of a three-judge district court must be denied.

## ORDER

ORDERED that:

(1) Plaintiff's motion for a preliminary injunction is denied.

(2) Plaintiff's motion for the convening of a three-judge district court is denied.

(3) Plaintiff's complaint is dismissed for lack of subject matter jurisdiction, but without costs.

Dated at New Haven, Connecticut, this 13th day of March, 1968.