**Rolf J. KOLDEN, Appellant,**

**v.**

**SELECTIVE SERVICE LOCAL BOARD NO. 4, BELTRAMI COUNTY, MINNESOTA, Appellee.**

**No. 19331.**

United States Court of Appeals
Eighth Circuit.

Jan. 28, 1969.

Joseph Perry, of Kuehn & Perry, St. Paul, Minn., for appellant; John S. Connolly, St. Paul, Minn., Chester Bruvold, and Lynn S. Castner, Minneapolis, Minn., were with him on the brief.

Morton Hollander, Atty., Dept. of Justice, Washington, D. C., for appellee; Edwin L. Weisl, Jr., Asst. Atty. Gen., Dept. of Justice, Washington, D. C., Patrick J. Foley, U. S. Atty., Minneapolis, Minn., and Robert V. Zener, Atty., Dept.

of Justice, Washington, D. C., were with him on the brief.

Before MATTHES, GIBSON and BRIGHT, Circuit Judges.

MATTHES, Circuit Judge.

Rolf J. Kolden, appellant, was at all pertinent times a graduate student at Harvard University, working for a Ph.D. degree. Until he turned in his draft card to an officer of the Government on October 16, 1967, at a meeting protesting the Viet Nam War, appellant possessed a II–S classification (student deferment). On November 8, he informed his local draft board (Beltrami County, Minnesota) that he had surrendered his draft card. Pursuant to 32 C.F.R. §§ 1642.4(a) and 1642.12 [1] the local board on December 1, 1967, declared appellant delinquent and reclassified him I–A for failure to comply with regulations 32 C.F.R. §§ 1617.1 and 1623.5, which require each registrant to have in his possession a Selective Service registration card and a notice of classification.

After a denial by the appeal board of appellant's timely appeal of his I–A classification, his local board ordered him to report for induction.[2] Subsequently, on February 22, 1968, appellant filed this action in the United States District Court for the District of Minnesota, first, for a temporary injunction to stay his induction into the Armed Forces and, second, upon a full hearing of his claim for a permanent injunction against his induction.

On April 9, the district court (Judge Lord) issued an order denying the motion for a temporary injunction on the grounds that a decision on the merits would require a review of the propriety of appellant's reclassification, and such review at that posture of the case is prohibited by § 10(b)(3) of the Military Selective Service Act, 81 Stat. 100, 50 U.S.C. App. § 460(b)(3). From that order, Kolden appealed to this Court. While his appeal was pending, his local board ordered him to report for induction on July 17, 1968. He then petitioned Judge Lord for an injunction or stay pending his appeal. The petition was denied. On July 16, Judge Blackmun of this Court, pursuant to Rule 8 of the Federal Rules of Appellate Procedure, granted appellant's request for an injunction pending determination of his appeal to this Court. Judge Blackmun further ordered that the appeal be expedited.[3]

Essentially, appellant contends his reclassification was illegal because: (1) the declaration that he was delinquent, his reclassification to I–A and his induction order are punitive in nature and impose punishment without due process of law; (2) the action by the board designating him a delinquent for failure to possess his draft card and reclassifying him I–A violated his freedom of speech protected by the First Amendment.

1. Section 1642.4(a) provides:
   "Whenever a registrant has failed to perform any duty or duties required of him under the selective service law other than the duty to comply with an Order to Report for Induction (SSS Form No. 252) or the duty to comply with an Order to Report for Civilian Work and Statement of Employer (SSS Form No. 153), the local board may declare him to be a delinquent."
   Section 1642.12 in pertinent part provides:
   "Any delinquent registrant * * * may be classified in or reclassified into Class I–A, Class I–A–O or Class I–O, whichever is applicable, regardless of other circumstances * * * *"

2. At the time of the filing of the complaint, appellant had received an Order to Report for Induction, SSS Form 252, but the date of induction had not yet arrived. The Order to Report for Induction was dated the same day as the notice of denial of appeal by the appeal board, February 1, 1968.

3. When this case was submitted in September, 1968, Oestereich v. Selective Service System Local Bd. No. 11, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (December 16, 1968) and Clark v. Gabriel, 393 U.S. 256, 89 S.Ct. 424, 21 L.Ed.2d 418 (December 16, 1968), were pending in the Supreme Court. We concluded that the decision of the Supreme Court in *Oestereich* and *Gabriel* would probably be relevant to the issues in this case, and consequently we deferred our opinion.

Section 10(b) (3) of the Military Selective Service Act, supra, precludes judicial review of any Selective Service classification prior to induction. Congress, through this statute, codified long-established prior case law. Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955); Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946). Section 10(b) (3) in applicable part states:

"No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution instituted under section 12 of this title, after the registrant has responded either affirmatively or negatively to an order to report for induction, or for civilian work in the case of a registrant determined to be opposed to participation in war in any form: *Provided,* That such review shall go to the question of the jurisdiction herein reserved to local boards, appeal boards, and the President only when there is no basis in fact for the classification assigned to such registrant."

In *Oestereich* a local draft board, in face of a statutory mandate that divinity students were exempt from military service (§ 6(g) of the Military Selective Service Act, 50 U.S.C. App. § 456(g)),[4] declared a divinity student a delinquent and reclassified him I–A after he had returned his registration card to the Government. The Court held that the local board's action in depriving the student of a statutory exemption was "blatantly lawless," and in such an instance § 10(b) (3) did not prevent the judiciary from restoring him to the classification to which he was legally entitled.

Speaking for the Court, Mr. Justice Douglas stated:

"Since the exemption granted divinity students is plain and unequivocal and in no way contested here, and since the scope of the statutory delinquency concept is not broad enough to sustain a revocation of what Congress has granted as a statutory right, or sufficiently buttressed legislative standards, we conclude that pre-induction judicial review is not precluded in cases of this type."

Restricting its decision to the particular facts of the case before it, the Court upheld the constitutionality of § 10(b) (3) in stating: "Our construction leaves § 10(b) (3) unimpaired in the normal operations of the Act."

In *Gabriel,* a registrant claiming conscientious objector status sought to have his induction enjoined on the grounds that his I–A classification was without basis in fact, that the local board had misapplied the statutory definition of conscientious objector and that members of his board were prejudiced against conscientious objectors. The district court granted registrant a preliminary injunction and held § 10(b) (3) unconstitutional on the basis that it deprived a person of any meaningful review. The Supreme Court reversed the district court's holding and pointed out that local boards possess statutory discretion to make proper classifications, evaluate evidence and determine whether a claimed exemption is deserved. The Court, in summary, stated:

"To allow pre-induction judicial review of such determinations would be to permit precisely the kind of 'litigous interruptions of procedures to provide necessary military manpower' (113 Cong.Rec. 8052 (June 12, 1967) (re-

---

4. This section reads as follows:
   "Regular or duly ordained ministers of religion, as defined in this title, * * * and students preparing for the ministry under the direction of recognized churches or religious organizations, who are satisfactorily pursuing full-time courses of instruction in recognized theological or divinity schools, or who are satisfactorily pursuing full-time courses of instruction leading to their entrance into recognized theological or divinity schools in which they have been pre-enrolled, shall be exempt from training and service (but not from registration) under this title * * *."

port by Senator Russell on Conference Committee action)) which Congress sought to prevent when it enacted § 10(b) (3).

"We find no constitutional objection to Congress' thus requiring that assertion of a conscientious objector's claims such as those advanced by appellee be deferred until after induction, if that is the course he chooses, whereupon habeas corpus would be an available remedy, or until defense of the criminal prosecution which would follow should he press his objections to his classification to the point of refusing to submit to induction. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 569 (1946). Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305 (1944)." 393 U.S. at 258, 259, 89 S.Ct. at 426.

The question we must now decide is whether in light of *Oestereich*, and *Gabriel*, § 10(b) (3) bars judicial review of appellant's local board's action in reclassifying him I–A. Because appellant did not possess a statutorily-required deferment, but one granted only by the discretion of the local board, we hold that § 10(b) (3) bars review at this stage of the Board's actions.

This case, unlike *Oestereich*, centers around appellant's classification under § 6(h), 50 U.S.C. App. § 456(h), which does allow the local board discretion in granting deferments. Basically, this section provides for deferments for (1) undergraduate college students; (2) persons engaged in certain occupations vital to the national health, safety or interest; (3) graduate students; (4) certain persons who have others dependent upon them for support; (5) fathers with families.

Section 6(h) makes a distinction between deferments for undergraduate students and those for graduate students. The statute *requires* the President to provide for undergraduate deferments except in time of necessity, but only *authorizes* him to do so for graduate students.

In applicable part § 6(h) (1) states: "Except as otherwise provided in this paragraph, the President *shall*, under such rules and regulations as he may prescribe, provide for the deferment from training and service in the Armed Forces of persons satisfactorily pursuing a full-time course of instruction at a college, university, or similar institution of learning and who request such deferment. A deferment granted to any person under authority of the preceding sentence shall continue until such person completes the requirements for his baccalaureate degree, fails to pursue satisfactorily a full-time course of instruction, or attains the twenty-fourth anniversary of the date of his birth, whichever first occurs. Student deferments provided for under this paragraph may be substantially restricted or terminated by the President only upon a finding by him that the needs of the Armed Forces require such action. *No person who has received a student deferment under the provisions of this paragraph shall thereafter be granted a deferment under this subsection, nor shall any such person be granted a deferment under subsection (i) of this section if he has been awarded a baccalaureate degree, except for extreme hardship to dependents (under regulations governing hardship deferments), or for graduate study, occupation, or employment necessary to the maintenance of the national health, safety, or interest.*" (Emphasis added.)

The section clearly mandates deferments for full-time undergraduate students, but further provides that no person who has been deferred as an undergraduate student and has since been graduated shall again be deferred. The statute, however, does provide for an exception which allows but does not require deferments for graduate study necessary to the national health, safety or interest.

Thus it is apparent that § 6(h) (1), when considered in relation to § 6(h)

(2), to which it logically refers, clearly reveals that Congress has made graduate deferments rest upon the discretion of the local boards. The latter section, in pertinent part, states:

"Except as otherwise provided in this subsection the President is authorized, under such rules and regulations as he may prescribe, to provide for the deferment from training and service in the Armed Forces of any or all categories of persons whose employment * * * *or whose activity in graduate study, research, or medical, dental, veterinary, optometric, osteopathic, scientific, pharmaceutical, chiropractic, chiropodial, or other endeavors is found to be necessary to the maintenance of the national health, safety, or interest: Provided, That no person within any such category shall be deferred except upon the basis of his individual status * * *.*"* (Emphasis added.) [5]

■ Thus, if appellant here had been an undergraduate student duly possessing a II–S classification who had been reclassified I–A for reasons other than ceasing to be a full-time student in good standing, the case would be more closely analogous to *Oestereich's* situation.[6] But where, as here, a registrant is deprived of a deferment that had been granted as a matter of administrative grace in the first instance, the courts can review the classification only in a criminal prosecution or a habeas corpus proceeding. In addition to *Oestereich* and *Gabriel*, see, for example, Breen v. Selective Service Local Bd. No. 16, 284 F. Supp. 749 (D.Conn.1968), aff'd, 406 F. 2d 636 (2d Cir. Jan. 10, 1969); Carpenter v. Hendrix, 277 F.Supp. 660 (N.D. Ga.1967); Moskowitz v. Kindt, 273 F. Supp. 646 (E.D.Pa.1967), aff'd, 394 F.2d 648 (3d Cir. 1968); Muhammed Ali v. Connally, 266 F.Supp. 345 (S.D.Texas 1967); United States v. Lybrand, 279 F.Supp. 74 (E.D.N.Y.1967).[7]

■ Thus, we hold simply that appellant does not fall within the statutory-exemption exception to § 10(b) (3) as laid down in *Oestereich*, and that appellant may not test the validity of the board's action in this proceeding. Since we are precluded at this time from reviewing the propriety of appellant's classification, we do not reach the merits of his contentions.

In summary, based upon the rationale of *Oestereich* and *Gabriel*, the time has not arrived for appellant to challenge the

---

5. The regulations promulgated pursuant to § 6(h) further illustrate the distinction between the statutorily required undergraduate deferment and the statutorily permitted graduate deferment. 32 C.F.R. § 1622.25 and § 1622.26.

6. Since the question is not before us we refrain from expressing an opinion as to whether § 10(b) (3) bars judicial review of a board's reclassification of *undergraduate* students from II–S to I–A for becoming delinquent. The Government in its brief argues that cases involving deferments under § 6(h) should be barred from review by § 10(b) (3) since § 6(h) authorizes deferments "under such rules and regulations as [the President] may prescribe." The Government argues that this grant of authority to prescribe rules and regulations is sufficiently broad to encompass the regulations establishing a delinquency procedure as well as the regulation specifying the circumstances under which deferments will be granted.

It further contends that the Supreme Court's denial of stay in Shiffman v. Selective Service Bd. No. 5, 391 U.S. 930, 88 S.Ct. 1831, 20 L.Ed.2d 849 (1968), represents an acceptance of this distinction. In *Shiffman*, registrant, who was declared a delinquent when he destroyed his draft card, and was reclassified from II–S to I–A, was denied an injunction against his induction on the basis of § 10(b) (3). See also a companion case, Zigmond v. Selective Service Bd. No. 16, 391 U.S. 930, 88 S.Ct. 1831, 20 L.Ed.2d 851 (1968). Contra, Kimball v. Selective Service Local Bd. No. 15, 283 F.Supp. 606 (S.D.N.Y.1968).

7. On January 14, 1969, the Supreme Court, by per curiam, affirmed Boyd v. Clark, United States District Court, S. Dist. N.Y., 287 F.Supp. 561, holding that § 10 (b) (3) bars court, prior to registrants' induction, from entertaining their suit challenging constitutionality of § 6(h) (1)'s student deferment provision. 393 U.S. 316, 89 S.Ct. 553, 21 L.Ed.2d 511.

validity of his reclassification. Consequently, we affirm the denial of the temporary injunction and direct the district court to dismiss the action.